```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

ESSEX CRANE RENTAL CORP.                         CIVIL ACTION

VERSUS                                           NO. 16-8146

DB CROSSMAR 14, ET AL.                           SECTION "B"(1)
```

## ORDER AND REASONS

Before the Court are Essex Crane Rental Corp.'s ("Essex" or "Plaintiff") "Motion for Order Noting Default" (Rec. Doc. 26), "Motion to Set Sale of Seized Vessel" (Rec. Doc. 27), "*Ex Parte* Motion to Continue Requested Sale Date of Seized Vessel from October 3, 2016 to October 17, 2016" (Rec. Doc. 46), and "Second *Ex Parte* Motion to Continue Requested Sale Date of Seized Vessel From October 17, 2016 to October 24, 2016" (Rec. Doc. 49). Defendant Cross Maritime, Inc. ("Cross Maritime" or "Defendant"), timely filed an opposition memorandum to the motion to set sale of the seized vessel. Rec. Doc. 28. The Court then granted leave for Essex to file a reply memorandum. Rec. Docs. 30, 43, 44. For the reasons discussed below,

**IT IS ORDERED** that the motion for order noting default is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to set sale of the seized vessel is **GRANTED**.

**IT IS FURTHER ORDERED** that the first motion to continue the sale (Rec. Doc. 46) is **DISMISSED AS MOOT**.

1

**IT IS FURTHER ORDERED** that the second motion to continue the sale (Rec. Doc. 49) is **GRANTED**.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the rental of a Manitowoc, 4100W-I, 230 Ton Lift Crane, Serial Number LC-M-41348 (the "Crane") from Essex to Defendant Cross Maritime, the purported owner of the DB CROSSMAR 14, bearing Official Number 1025224, (the "Vessel"). Rec. Doc. 1 at ¶ VI.[1] Essex alleges that, pursuant to the rental agreement dated January 2, 2008, the owner and operator of the Vessel was provided the Crane and various services and/or personnel in exchange for a monthly rental in the amount of $14,000.00. *Id.* at ¶¶ VI-VII. The agreement further provides that the owner of the Vessel is obligated to pay for the transportation of the Crane at the agreed price of $18,000.00 and that the failure to pay invoices when due entitles Essex to terminate the agreement, take possession of the crane, recover rental amounts then due, recover damages, costs, and disbursements (including attorney's fees), and impose a finance charge of 1.5% per month (18% per annum) for payments that are past due. *Id.* at ¶¶ VIII-XI. Essex invoiced Cross Maritime "in the amount of approximately $213,000 for Crane Rental through

---

[1] Essex's verified complaint avers that it entered into the rental agreement with "Cross Group, as owner and operator of the defendant Vessel." Rec. Doc. 1 at ¶ VI. Defendant Cross Maritime answered the complaint, however, and denied that Cross Group owns or operates the Vessel. Rec. Doc. 20 at ¶ 6. It appears that both Cross Group and Cross Maritime are wholly owned subsidiaries of Cross Holdings, Inc. Rec. Docs. 23, 24. For the purposes of this Order, it shall be assumed that Essex entered into an agreement with Cross Maritime, the owner and operator of the Vessel.

2

May 2, 2016," which Cross Maritime has allegedly failed to pay, in breach of the rental agreement. *Id.* at ¶ XII.

On June 3, 2016, Essex filed a verified complaint, naming as defendants the Vessel, *in rem*, the Crane, *in rem*, and Cross Group, Inc., *in personam*. Rec. Doc. 1. On June 6, 2016, this Court granted Essex's motion for issuance of arrest warrants for the Vessel and the Crane. Rec. Doc. 5. It was further ordered that Admiral Security Services be appointed substitute custodian and that the Vessel remain at its berth at 1950 South Van Ave., Houma, Louisiana 70363, and that the Crane remain on board, until further Court order. Rec. Doc. 6. On August 2, 2016, this Court granted Essex's *ex parte* motion to lift the arrest of the Crane and granted Essex permission to remove the Crane from the Vessel. Rec. Doc. 18. On August 3, 2016, Cross Group, Inc. and Cross Maritime filed answers to Essex's verified complaint. Rec. Docs. 19, 20. Shortly thereafter, on August 16, 2016, this Court granted Cross Maritime's *ex parte* motion to move the Vessel within the Port of Terrebonne and to remove diving equipment belonging to Ranger Offshore, Inc. Rec. Doc. 22.

On September 2, 2016, Essex filed its motion for order noting default (Rec. Doc. 26) and its motion to set sale of the Vessel (Rec. Doc. 27). Two weeks later, on September 16, 2016, Wells Fargo Equipment Finance, Inc. ("Wells Fargo" or "Intervenor") filed an *ex parte*/consent motion to intervene, asserting an interest in the

3

Vessel by virtue of a promissory note by Cross Maritime in favor of General Electric Capital Corporation, now owned by Wells Fargo. Rec. Docs. 29, 32 at ¶ IV. Wells Fargo claimed payment of the promissory note was secured by a preferred ship mortgage in favor of Wells Fargo encumbering 100% of the Vessel. Rec. Doc. 32 at ¶ IV. On September 20, 2016, this Court granted Wells Fargo's *ex parte*/consent motion for issuance of an arrest warrant for the Vessel. Rec. Doc. 40.

## II.   THE PARTIES' CONTENTIONS

### A. MOTION FOR ORDER NOTING DEFAULT

Essex's motion for order noting default and accompanying memorandum move for an order noting default under Rules C(4) and C(6) of the Supplemental Rules for Admiralty or Maritime Claims and Local Admiralty Rule 64.1, claiming that notice of the arrest was published in the *Times-Picayune* on June 24, July 1, July 8, and July 15, 2016. Rec. Doc. 26-1 at ¶ 4. Plus, actual notice was provided to the owner of the Vessel and Wells Fargo Equipment Finance, Inc. "as the sole lienholder of record with the U.S. Coast Guard." *Id.* at ¶ 10. Because no person or entity asserted either ownership or possessory rights in either the Vessel or the Crane within the 21-day time period provided for by the rules, Essex requested "a Default Judgment noting a default of all persons who have failed to appear and make claim or answer to the Vessel . . . ." *Id.* at ¶ 11. No opposition memorandum was filed.

4

### B. MOTION TO SET SALE OF SEIZED VESSEL AND MOTION TO CONTINUE

Relying on Supplemental Rule E, Essex argues that the Vessel is earning no revenue and that the continued arrest of the Vessel exposes it to "risks of loss or other hazards." Rec. Doc. 27-1 at 5. Additionally, Essex asserts that Cross Maritime's "failure to post security (or even attempt to post security) for release of the Vessel [in the four months after its arrest] constitute unreasonable delay." *Id.* at 5. According to Essex, the Vessel accrues $720.00 in custodial costs per day, amounting to more than $60,000 as of September 2, 2016. *Id.* at 6.

In its opposition, Cross Maritime alleges that Essex has failed to substantiate its claim for necessaries or state "the exact amount of the alleged past due rental payments that Essex claims to be outstanding at the time of the Vessel arrest." Rec. Doc. 28 at 2. Even though Cross Maritime admits that it has received a "ball park" estimate of the amounts due, it believes that "Essex's estimates are grossly inflated and that it is being forced under economic duress to pay sums above and beyond the amount of rental payments due for the actual rental of the crane through the date of arrest in order to secure the release of the Vessel." *Id.*[2] Relying on a due process argument, Cross Maritime

---

[2] Cross Maritime also asserts that Essex has verbally quoted to them sums including rental amounts accruing after the arrest and contractual interest due, both of which Cross Maritime asserts should not be included in calculating the maritime lien and amount necessary to secure release of the Vessel. Rec. Doc. 28 at 3.

5

asserts that Essex should be made to detail the exact amount of its lien for necessaries before the Vessel is set for sale and Cross Maritime is deprived of its ownership interest. *Id.* at 3-4. Until such an accounting is provided, Cross Maritime cannot determine what amount is needed to discharge the alleged lien and vacate the Vessel's arrest. *Id.* at 4.

Additionally, Cross Maritime alleges that Essex is in default of its own financial obligations to Well Fargo Capital Finance ("WFCF") to the extent that some of Essex's assets have been seized for public sale. Rec. Doc. 28 at 4 (citing Rec. Doc. 28-1 at 3-6, a July 11, 2016 Business Wire article detailing updates on Essex's business). Accordingly, on July 18, 2016, WFCF convened a public auction of all of Essex's personal property, including "accounts" and "general intangibles." *Id.* (citing Rec. Doc. 28-1 at 7, "Notice of Public Sale"). Consequently, Cross Maritime asserts that Essex's ownership interest in the claims asserted in this litigation are uncertain, such that Essex may have already ceased, or will cease, to have standing if those claims were or are sold at public auction. *Id.* at 5.

In its brief reply, Essex states that Cross Maritime failed to contest any of the three bases for an interlocutory sale under Supplemental Rule E. Rec. Doc. 44 at 1-2. Further, Essex notes that it is neither necessary nor appropriate to examine the merits of the underlying claims when determining the appropriateness of

6

an interlocutory sale of the vessel. *Id.* at 3. Nonetheless, Essex argues that it provided a verified complaint including the expenses incurred by Essex, amounts owed by Cross Maritime (including more than $200,000.00 in unpaid rentals), and a statement attesting to Essex's standing to bring these claims. *Id.* at 3-4.

Notably, since its intervention on September 16, 2016, Wells Fargo has not filed a motion or memorandum in support of or in opposition to Essex's motion to set sale of the Vessel.

### III. LAW AND ANALYSIS

#### A. MOTION FOR ORDER NOTING DEFAULT

Under Rule C(4) of the Supplemental Rules for Admiralty or Maritime Claims, public notice of an action and arrest must be made if the property is not released within 14 days after execution. FED. R. CIV. P. C(4). Rule C(6) further provides that in an action *in rem*, "(i) a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest: (A) within 14 days after the execution of process, or (B) within the time that the court allows . . . ." Local Admiralty Rule 64.1 provides that any time publication is necessary under Admiralty Rule C(4), "the time for filing . . . any ownership interest in the property . . . is hereby extended for a period of 21 days from the date of the publication." FED. R. CIV. P. C(6). Local Admiralty Rule 64.5 provides that, unless otherwise ordered by the court or

7

provided by law, all such notices shall be published in the *Times-Picayune*.[3]

Here, the Vessel was arrested sometime after the June, 6, 2016 order granting the motion for issuance of warrants was entered by this Court.[4] Presumably within 14 days after execution of the warrant, Essex published the required notice in the *Times-Picayune* on June 24, 2016. It appears to the Court that Essex satisfied all of the notice requirements set forth in both the supplemental admiralty rules and local admiralty rules, as evidenced by the affidavit and legal notice attached to its motion. Rec. Doc. 26-2. Nonetheless, this Court permitted Wells Fargo to intervene on September 16, 2016, after the 21-day waiting period expired, in accordance with Rule C(6)(i)(B). Rec. Doc. 31. Even though Wells Fargo did not file a verified statement of interest within the 21-day period, this Court nonetheless felt that it was appropriate to allow Wells Fargo an opportunity to assert its purported rights. Given that the notices were published three months ago and there have been no additional interventions, granting Essex's motion will serve only to limit the suit to the parties who have already

---

[3] LAR 64.1 also provides that the notice must contain particular information and it appears that the notice published by Essex in the *Times-Picayune* included all such information, save for the name of the marshal who seized the vessel and that a person asserting an ownership or possessory interest may file within any time allowed by the court (not only 21 days after the first publication). Rec. Doc. 26-2 at 2.
[4] Rec. Doc. 5. It appears that Todd Thibodeaux was served with the warrant, order, and accompanying motion on June 8, 2016. Rec. Doc. 11 at 1.

joined. To the extent that Essex's motion seeks to limit any further interventions, it should be granted subject to good cause exception.

### B. MOTION TO SET SALE OF SEIZED VESSEL AND MOTION TO CONTINUE

Under Rule E(9)(a) of the Supplemental Rules for Admiralty or Maritime Claims,

> On application of a party . . . the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A)  the attached or arrested property is perishable, or liable to deterioration, decay, or injury, by being detained in custody pending the action;
>
> (B)  the expense of keeping the property is excessive or disproportionate; or
>
> (C)  there is an unreasonable delay in securing release of the property.

FED. R. CIV. P. E(9)(a). "In order to prevail, the lienors need only show one of the three criteria." *Bollinger Quick Repair, LLC v. Le Pelican MV*, No. 00-308, 2000 WL 798497, *2 (E.D. La. June 20, 2000) (citing *Merchs. Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338 (5th Cir. 1981); *Silver Star Enters., Inc. v. M/V Saramacca*, 19 F.3d 1008, 1014 (5th Cir. 1994); *Triton Container Int'l Ltd. V. Baltic Shipping Co.*, No. 95-0427, 1995 WL 341579 (E.D. La. June 7, 1995)).

In *Merchants National Bank of Mobile*, the Fifth Circuit determined that the interlocutory sale of a couple of vessels was justifiable when (1) expert evidence suggested that if the vessels

were to lay idly without routine maintenance, the engine(s) might rust and freeze up, the electric equipment was susceptible to corrosion, rust, and general deterioration, and the hulls and superstructures were subject to rusting; (2) the costs attributable to the vessels exceeded $17,000 per month, all of which was paid by the lienholders "with uncertain hope of reimbursement"; and (3) the vessel owners "never posted bond, entered into any stipulation, or otherwise attempted to secure the release of the vessels pursuant to Rule E(5)." 663 F.2d at 1342.

Furthermore, Essex cites to *Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO*, No. 02-0658, 2002 WL 31654856, at *3 (E.D. La. Nov. 9, 2002), for the proposition that "[a] vessel is liable to deteriorate when the vessel is not earning revenue, is not being maintained, has no crew and is exposed to collision risks or other hazards." Rec. Doc. 27-1 at 5. In *Boland*, however, plaintiffs hired a marine surveyor to inspect the vessel and the surveyor determined that "the vessel was moored near two floating derrick barges in a busy waterway, that the vessel was not working or earning revenue, that there was no crew on board, that no maintenance work had been performed lately, and that the aft main deck and aft controls were in poor condition." *Boland*, 2002 WL 31654856, at *3. Additionally, the motion for interlocutory sale was filed about four months after the vessel was arrested. *Id.* at *2. Ultimately, the court determined that plaintiffs were entitled to an interlocutory sale

"based either on [the owner's] unreasonable delay in securing the release of the [vessel] or on the vessel's potential for deterioration, decay, or injury." *Id.* at *4.

Here, Essex has alleged only that the vessel is earning no revenue while under arrest and is exposed to various "risks of loss and hazards" on a daily basis. Rec. Doc. 27-1 at 5. Even though these allegations were not denied by Cross Maritime in its opposition memorandum, the Court is not inclined to find this a sufficient basis for ordering the sale of the Vessel.

Turning to the second basis for setting the sale of a vessel, the expense of keeping the property may be excessive or disproportionate when, for example, costs exceed $17,000 per month (as in *Merchants National Bank*, 663 F.2d at 1342) or the annual cost is $166,000 (or about $13,833.33 per month, as in *Ferrous Fin. Servs. Co. v. O/S. Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983)). Here, it is unclear whether or not Essex argues that the cost is excessive or disproportionate, but the Court finds that the daily custodial costs of $720.00 (amounting to approximately $21,600.00 per month) are excessive.

Turning to the third basis for setting the sale of a vessel, what amounts to an unreasonable delay depends on the circumstances. *See Silver Star Enters.*, 19 F.3d at 1014 (in which the Fifth Circuit affirmed the district court's judgment regarding the interlocutory sale of the vessel due to an unreasonable delay when

11

it was undisputed that the owner of the vessel "failed to post security for the release of the vessel during the seven months between the time of arrest and the court's sale order"). Essex asserts that "[c]ourts have held a lapse of three months or more in securing the release of a vessel after its arrest constitutes an unreasonable delay." Rec. Doc. 27-1 at 5. In support of this proposition, Essex cites several cases, including *Silver Star Enterprises* and *Merchants Nat'l Bank*, previously discussed. Additionally, Essex refers to *Neptune Orient Lines v. Halla Merch. Marine Co.*, No. 97-3828, 1998 WL 128993, at *6 (E.D. La. Mar. 20, 1998) (in which the court denied a motion to postpone the interlocutory sale of the vessel, because (1) the action was initiated three and one half months earlier and the owner had not yet posted security, such that further delay would be unreasonable, (2) the vessel was subject to deterioration, and (3) "[m]ost importantly, postponement of the sale would prejudice crewmembers"); *Ferrous Fin. Servs. Co.*, 567 F. Supp. at 401 (in which the court granted the motion for an interlocutory sale where the case was unlikely to be resolved within the year, no attempt to release the vessel had been made in the four months since its arrest, and the annual cost of keeping the vessel was $166,000, such that there was an unreasonable delay in securing the release of the vessel and the expense of keeping the vessel was excessive); and *Bollinger Quick Repair, LLC v. Le Pelican MV*, No. 00-308, 2000

12

WL 798497, at *2 (E.D. La. June 20, 2000) (in which four months had elapsed since the arrest of the vessel).

Here, the vessel was arrested about four months ago. Rec. Docs. 5, 11. During that time, Cross Maritime has allegedly promised payment to Essex, but it has not attempted to post security. Rec. Doc. 27-1 at 6. In light of the overwhelming jurisprudence, this Court is inclined to find that there has been an unreasonable delay in securing release of the vessel.

Turning to Cross Maritime's opposition, it is important to note that this is an interlocutory sale in which the rule "does not require, or even mention, the resolution of the merits of any particular claim; instead, the Rule focuses entirely on avoiding the recognized complications associated with maintaining a vessel under arrest." *Freret Marine Supply v. M/V ENCHANGED CAPRI*, No. 00-3805, 2001 WL 649764, at *1 (E.D. La. June 11, 2001), *aff'd* 37 F. App'x 714 (5th Cir. 2002). In *Ferrous Fin. Serv. Co.*, when defendants argued that the interlocutory sale of the vessel, "without the court first rendering judgment, is a deprivation of property without due process of law in violation of the Fifth Amendment," the court stated that the contention was "unpersuasive, without merit, and is rejected." *Ferrous*, 567 F. Supp. at 401. "The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the

proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Id.*

Thus, even though Essex merely claimed in its verified complaint that it was owed approximately $213,000 (Rec. Doc. 1 at ¶ 12), without providing a detailed accounting that would allow Cross Maritime or the Court to determine the amount attributable to necessaries, it is not the responsibility of this Court *at this time* to examine the merits of Essex's claim. As Essex pointed out, Cross Maritime did "not cite a single case in which a court delayed the sale of a vessel due to the purported need for an accounting of a lien claim or the purported issue of standing to bring a claim." Rec. Doc. 44 at 2. If Cross Maritime wanted to challenge the propriety of the arrest, it could have filed for an evidentiary hearing under Federal Rule of Civil Procedure E(4)(f).[5] Further, without sufficient proof that Essex's interest in this litigation has been sold, Essex appears to maintain a vested interest in the outcome and therefore has standing.[6]

This Court is inclined to agree with Essex:  "The continued arrest is serving no useful purpose, and the Vessel's Owner has had more than sufficient time to secure the release of the Vessel."

---

[5] This rule provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." FED. R. CIV. P. E(4)(f).
[6] Despite the article cited by Cross Maritime (Rec. Doc. 28-1 at 7), it is not clear that Essex's interest in the litigation has been sold.

14

Rec. Doc. 27-1 at 7. The sale of the Vessel is permitted under either Federal Rule of Civil Procedure E(9)(a)(1)(B) or (C), because the expense of keeping it is excessive and there was an unreasonable delay in securing its release.

In its original motion, Essex requested a sale date of October 3, 2016 at 10:00 a.m. Rec. Doc. 27-1 at 3. In order to conform to Local Admiralty Rule 64.6, which requires publication of all vessel sales at least 14 days before the scheduled date, and after conferring with the United States Marshal's Service, Essex filed a motion to continue the sale date to October 17, 2016 at 10:00 a.m. Rec. Doc. 46 at 1. Thereafter, Essex again filed a motion to continue the sale date to October 24, 2016 at 10:00 a.m. Rec. Doc. 49 at 1-2.

**IV.   CONCLUSION**

For the reasons outlined above,

**IT IS ORDERED** that Essex's motion for order noting default (Rec. Doc. 26) is **GRANTED** in accordance with the analysis above. All persons and/or entities claiming an interest in the DB CROSSMAR 14, bearing Official Number 1025224, who have not yet filed and served on counsel for Plaintiff a verified statement of right or interest are hereby barred from filing any such statement.

**IT IS FURTHER ORDERED** that Essex's motion to set sale of the seized vessel (Rec. Doc. 27) is **GRANTED.**

**IT IS FURTHER ORDERED** that Essex's first motion to continue the sale (Rec. Doc. 46) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that Essex's second motion to continue the sale (Rec. Doc. 49) is **GRANTED.** Accordingly,

**IT IS FURTHER ORDERED** that the United States Marshals Service is directed to sell the DB CROSSMAR 14, Official Number 1025224 (the "Vessel"), to the highest bidder at public auction, with minimum bid increments of $10,000.

**IT IS FURTHER ORDERED** that the auction be held on October 24, 2016 at 10:00 a.m. in the lobby of the U.S. District Court, 500 Poydras Street, New Orleans, Louisiana.

**IT IS FURTHER ORDERED** that Essex Crane Rental Corp. will advertise the auction in the *Times-Picayune* in accordance with the Local Rules of this Court. The costs of the advertisement and an affidavit of publication will constitute taxable costs in this action and be recoverable as *custodia legis* from the sale proceeds of the Vessel.

**IT IS FURTHER ORDERED** that the auction will be conducted in accordance with Local Admiralty Rule 64.6, which is incorporated by reference into this Order. In the event of default by the highest bidder in consummating the purchase, the deposit will be forfeited and placed into the Court Registry pending further Court order.

**IT IS FURTHER ORDERED** that the Vessel will be sold "as is, where is," and free and clear of all liens, encumbrances, and pre-existing claims on the vessel, whether recorded or not.

**IT IS FURTHER ORDERED** that anyone wishing to inspect the Vessel must first present himself, along with photo identification, to the office of the U.S. Marshals Service, 500 Poydras Street, New Orleans, Louisiana, and/or the Substitute Custodian, Admiral Security Services. The Vessel presently lies afloat at 1950 South Van Ave., Houma, Louisiana 70363.

**IT IS FURTHER ORDERED** that all charges incurred by the United States Marshal, Essex Crane Rental Corp., and other parties funding the United States Marshal's costs and those fees and costs of the Substitute Custodian with respect to the Vessel during the period of arrest shall be expenses of the sale which shall be taxed as costs of *custodia legis* against the proceeds of the sale.

**IT IS FURTHER ORDERED** that the proceeds of the sale will remain in the Court Registry in an interest bearing account pending further order of this Court.

New Orleans, Louisiana, this 6th day of October, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE