**UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF LOUISIANA**

**ESSEX CRANE RENTAL CORP.**                                **CIVIL ACTION**

**VERSUS**                                                  **NO. 16-8146**

**DB CROSSMAR 14, ET AL.**                                  **SECTION "B"(1)**

                              **ORDER AND REASONS**

Before the Court is the "Motion for Summary Judgment of Wells Fargo Equipment Finance, Inc." Rec. Doc. 77. The motion was set for submission on March 1, 2017. Pursuant to Local Rule 7.5, any opposition memorandum was due on or before February 21, 2017. No opposition was filed. Instead, on March 1, 2017, Cross Maritime, Inc. and Cross Holdings, Inc. (collectively "Cross") filed a motion for an extension of time within which to respond. Rec. Doc. 82. For reasons given in a separate Order and Reasons, that motion for an extension was denied.[1] It appearing to the Court that Wells Fargo's motion for summary judgment has merit,

**IT IS ORDERED** that the motion for summary judgment (Rec. Doc. 77) is **GRANTED**.

   I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This cases arises out of the rental of a Manitowoc, 4100W-I, 230 Ton Lift Crane, Serial Number LC-M-41348 (the "Crane") from

---

[1] It is also worth noting that, pursuant to this Court's Scheduling Order, the parties were to file into the record "a list of all witnesses who may or will be called to testify at trial and all exhibits that may or will be used at trial no later than FEBRUARY 20, 2017." Rec. Doc. 42 at 2 (emphasis in original). While Wells Fargo timely submitted its lists to the Court, Cross Maritime, Inc. and Cross Holdings, Inc. have yet to file theirs.

former Plaintiff Essex Crane Rental Corp. ("Essex") to Cross, the purported owner of the DB CROSSMAR 14, bearing Official Number 1025224, (the "Vessel"). Rec. Doc. 1 at ¶ VI.[2] Essex alleged that, pursuant to a rental agreement dated January 2, 2008, the owner and operator of the Vessel was provided the Crane and various services and/or personnel in exchange for a monthly rental in the amount of $14,000.00. *Id.* at ¶¶ VI-VII. The agreement further provided that the owner of the Vessel was obligated to pay for the transportation of the Crane at the agreed price of $18,000.00 and that the failure to pay invoices when due entitled Essex to terminate the agreement, take possession of the Crane, recover rental amounts then due, damages, costs, and disbursements (including attorneys' fees), and impose a finance charge of 1.5% per month (18% per annum) for payments that were past due. *Id.* at ¶¶ VIII-XI. Essex invoiced Cross "in the amount of approximately $213,000 for Crane Rental through May 2, 2016," which Cross subsequently failed to pay. *Id.* at ¶ XII.

On June 3, 2016, Essex filed a verified complaint, naming as defendants the Vessel, *in rem*, the Crane, *in rem*, and Cross, *in personam*. Rec. Doc. 1. On June 6, 2016, this Court granted Essex's

---

[2] Essex's verified complaint avers that it entered into the rental agreement with "Cross Group, as owner and operator of the defendant Vessel." Rec. Doc. 1 at ¶ VI. Defendant Cross Maritime, Inc. answered the complaint, however, and denied that Cross Group owns or operates the Vessel. Rec. Doc. 20 at ¶ 6. It appears that both Cross Group and Cross Maritime, Inc. are wholly owned subsidiaries of Cross Holdings, Inc. Rec. Docs. 23, 24. For the purposes of this Order and Reasons, Cross Maritime, Inc. and Cross Holdings, Inc. will be referred to collectively as "Cross," unless otherwise specifically identified.

motion for issuance of arrest warrants for the Vessel and the Crane. Rec. Doc. 5. On August 3, 2016, the Cross entities filed answers to Essex's verified complaint. Rec. Docs. 19, 20.

On September 2, 2016, Essex filed a motion for order noting default (Rec. Doc. 26) and a motion to set sale of the Vessel (Rec. Doc. 27). Two weeks later, on September 16, 2016, Wells Fargo Equipment Finance, Inc. ("Wells Fargo" or "Intervenor") filed an *ex parte*/consent motion to intervene, asserting an interest in the Vessel by virtue of a promissory note by Cross Maritime, Inc. in favor of General Electric Capital Corporation ("GECC"), now owned by Wells Fargo. Rec. Docs. 29, 32 at ¶ IV. Wells Fargo claims payment of the promissory note was secured by a preferred ship mortgage encumbering 100% of the Vessel (Rec. Doc. 32 at ¶ IV) and that Cross Holdings, Inc. acted as a guarantor (Rec. Doc. 77-3 at 2). On September 20, 2016, after allowing Wells Fargo to intervene, this Court granted Wells Fargo's *ex parte*/consent motion for issuance of an arrest warrant for the Vessel. Rec. Doc. 40.

On October 7, 2016, we granted Essex's motion to set sale of the Vessel. Rec. Doc. 53. On October 20, 2016, we granted Wells Fargo's unopposed motion for partial summary judgment and thereby recognized the mortgage held by Wells Fargo and its authority to credit bid at the sale. Rec. Doc. 66. We also recognized that, as of July 31, 2016, Cross Maritime, Inc. owed Wells Fargo $7,119,195.22. *Id.* at ¶ 2. The Vessel was subsequently sold to

Wells Fargo on October 28, 2016 for $2,497,500.00, three quarters of the appraised value of the Vessel. Rec. Docs. 68; 77-3 at 4. After Wells Fargo paid the Marshal $37,477.50 for its sale commission and $118,529.98 for *custodia legis* charges (*see* Rec. Doc. 77-1 at 3) and giving Cross an opportunity to object to the sale, this Court confirmed the sale on November 9, 2016 (Rec. Doc. 70). A bill of sale was filed on November 14, 2016. Rec. Doc. 71.

On January 3, 2017, after settling with Wells Fargo for $165,000, Essex moved to dismiss all of its claims. Rec. DocS. 72; 77-3 at 5; 77-1 at 3. Accordingly, the only claims remaining are those asserted by Wells Fargo against the Vessel, Cross Maritime, Inc. and Cross Holdings, Inc. Rec. Doc. 32.

## II. THE PARTIES' CONTENTIONS

Wells Fargo seeks money judgments against Cross Maritime, Inc., the obligor, and Cross Holdings, Inc., the guarantor, for the remaining balance due, "including the deficiency following the U.S. Marshal's sale of the [Vessel], costs and expenses related to the vessel sale, and reimbursement of its reasonable attorneys' fees and costs of collection." Rec. Doc. 77-3 at 1.

## III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

Wells Fargo claims that, as of November 24, 2016, Cross Maritime, Inc. owed $5,174,996.57, exclusive of (1) accrued interest at 12%, (2) accrued interest at the federal judicial rate, and (3) reimbursement of reasonable attorneys' fees and costs of collection. Rec. Doc. 77-3 at 6-7, n.25. Specifically, Wells Fargo claims that Cross Maritime, Inc. was informed on August 15, 2016 that Wells Fargo was accelerating the debt and imposing the default rate of 12% *per annum* on the principal balance. *Id.* at 7 (citing Rec. Doc. 77-1 at ¶ 11, 4, 76-77). The price of the Vessel at the sale, $2,497,500, was credited to the accrued interest as of November 14, 2016 (the date the Bill of Sale was provided) and then to reduce the principal amount. *Id.* at 7-8 (citing LA. CIV. CODE ANN. art. 1866 ("An obligor of a debt that bears interest may not, without the obligee's consent, impute a payment to principal when interest is due. A payment made on principal and interest must be imputed first to interest.").

Significantly, Wells Fargo's winning bid mirrored the minimum bid set by the Marshal, or three quarters of the appraised value of the Vessel. *Id.* at 8. Thus, the price paid by Wells Fargo was not "grossly inadequate." *See Latvian Shipping Co. v. Baltic Shipping Co.*, 99 F.3d 690, 693-94 (5th Cir. 1996) (noting that a sale price equal to 42.5% of the suggested fair market value was greater than those found in cases in which the sales price was determined to be inadequate) (citing *First Nat'l Bank of Jefferson*

*Par. v. M/V Lightning Power*, 776 F.2d 1258 (5th Cir. 1985) (denying confirmation of the sale where the vessel was sold for 1% of the fair market value); *Jefferson Bank & Trust Co. v. Van Niman*, 722 F.2d 251 (5th Cir. 1984) (remanding to the district court where the vessel was sold for 0.25-0.5% of the fair market value)).

Wells Fargo also argues that Cross Maritime, Inc. is liable for all obligations listed in the mortgage, including reimbursement for the Marshal's commission, *custodia legis* charges, the amount to secure release of Essex's lien claims, and reasonable attorneys' fees and costs of collection. Rec. Doc. 77-3 at 8 (citing Rec. Doc. 77-1 at 29 (providing that the proceeds of any sale of the Vessel shall be applied to pay (1) all reasonable costs, including attorneys' fees and expenses, of the mortgagee; (2) amounts due under the mortgage and note; and (3) the mortgagor, if there is a surplus; however, if the proceeds are insufficient, then the mortgagee "shall have the right to collect and to receive from Mortgagor . . . such amount as will fully pay any remaining deficiency")). Further, Wells Fargo maintains that Cross Maritime, Inc. owes interest on all of these charges at the federal judicial rate from the date of judgment until paid. *Id.* at 9-10.

Finally, Wells Fargo claims that it is entitled to reasonable attorneys' fees. *Id.* at 10 (citing Rec. Doc. 77-1 at 6 (providing that "Maker hereby . . . agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual

7

attorneys' fees")). It asks this Court to include a provision in the judgment "reciting that Wells Fargo is also entitled to its reasonable attorneys' fees and costs of collection to be liquidated and quantified pursuant to separate motion therefor to be filed by Wells Fargo in accordance with Rule 54(d) of the Federal Rules of Civil Procedure." *Id.*[3]

As to Cross Holdings, Inc., Wells Fargo argues that, as guarantor, Cross Holdings, Inc. is solidarily liable for all of Cross Maritime, Inc.'s indebtedness to Wells Fargo. *Id.* Under Louisiana law, "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." LA. CIV. CODE ANN. art. 3035. Notably, "[a] contract is accessory when it is made to provide security for the performance of an obligation." LA. CIV. CODE ANN. art. 1913. Further "[a] surety . . . is liable to the creditor . . . for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity." LA. CIV. CODE ANN. art. 3045. Here, Cross Holdings, Inc. entered into a suretyship contract and thereby bound itself to satisfy Cross Maritime, Inc.'s obligations to GECC or GECC's assignee(s). *See*

---

[3] Notably, Rule 54(d)(2) provides that a motion for attorneys' fees must be filed no later than 14 days after the entry of judgment.

Rec. Doc. 77-1 at 9-13.[4] When the note was assigned by GECC to Wells Fargo, the suretyship contract was also assigned. Rec. Doc. 77-3 at 11 (citing LA. CIV. CODE ANN. art. 2645 ("The assignment of a right includes its accessories such as security rights")).

Wells Fargo also asks the Court to confirm the validity of the Security Agreement. Rec. Doc. 77-3 at 12. This agreement provides a security interest in the property related to the Vessel to Wells Fargo. *Id.* It was an accessory contract to the note and thus was automatically assigned to Wells Fargo, like the suretyship contract. *Id.* It was subsequently perfected when Wells Fargo filed a UCC-1 Financing Statement in Terrebone Parish on July 22, 2014. *Id.* (citing Rec. Doc. 77-1 at 2, 64-69).

After reviewing the motion for summary judgment, accompanying documents, and cited law, it appears to the Court that Wells Fargo is entitled to summary judgment.

---

[4] The contract specifically provides that "the term 'Beneficiary' shall mean [GECC] and . . . assigns . . . ." Rec. Doc. 77-1 at 9. Further, "[i]f more than one Guarantor has entered into this Guaranty, the obligations of each Guarantor under this Guaranty shall be joint and several and any reference below to 'Guarantor' shall mean each such Guarantor. To induce Beneficiary [GECC and its assigns] to extend credit to . . . purchase or otherwise acquire . . . any loan agreements . . . relating to . . . Cross Maritime, Inc. . . . Guarantor . . . does hereby absolutely, unconditionally and irrevocably guarantee, as primary obligor and not merely as surety . . . payment of any sum or sums of money which Customer may owe to Beneficiary now or at any time hereafter . . . . Guarantor does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by Beneficiary by reason of Customer's default or default of Guarantor."

**IV. CONCLUSION**

   **IT IS ORDERED** that the motion for summary judgment (Rec. Doc. 77) is **GRANTED**. Accordingly,

   **IT IS ORDERED** that judgment is entered in favor of Wells Fargo Equipment Finance, Inc. against Cross Maritime, Inc. and Cross Holdings, Inc. *in solido* as follows:

   1. In the principal amount of $4,839,375.40, plus interest at the default rate of 12% *per annum*, accruing after November 14, 2016 until paid in full;

   2. In the principal amount of $335,621.17, plus interest at the federal judicial rate accruing from the date of this judgment until paid in full;

   3. In the amount of the reasonable attorneys' fees and costs of collection of Wells Fargo to be set by the Court on separate motion of Wells Fargo; and

   4. This Court recognizes, confirms, and maintains the validity and efficacy of the Security Agreement and related Collateral Schedule 001 affecting the properties described therein.

New Orleans, Louisiana, this 13th day of March, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE